No. 20-4390

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

CHIKOSI LEGINS,

Defendant-Appellant
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
_____

BRIEF FOR THE UNITED STATES AS APPELLEE
_____

GREGORY B. FRIEL
 Deputy Assistant Attorney General

TOVAH R. CALDERON
CHRISTOPHER C. WANG
 Attorneys
 Department of Justice
 Civil Rights Division
 Appellate Section
 Ben Franklin Station
 P.O. Box 14403
 Washington, D.C.  20044-4403
 (202) 514-9115

**TABLE OF CONTENTS**

**PAGE**

STATEMENT OF JURISDICTION................................................................... 1

STATEMENT OF THE ISSUES..................................................................... 2

STATEMENT OF THE CASE........................................................................ 2

    *1.*    *Statement Of The Facts* ........................................................ 3

        *a.*    *Legins's Alleged Sexual Activity With B.L.*................................3

        *b.*    *Legins's False Statements During The Investigation* ................6

        *c.*    *Legins's Related Obstructive Conduct* ......................................9

    *2.*    *Procedural History* ............................................................ 10

        *a.*    *Indictment And Verdict* ........................................................ 10

        *b.*    *Post-Trial Proceedings* ......................................................... 12

        *c.*    *Sentencing* ............................................................................ 15

SUMMARY OF THE ARGUMENT ................................................... 19

ARGUMENT

    I    SUFFICIENT EVIDENCE SUPPORTED LEGINS'S CONVICTION UNDER 18 U.S.C. 1001 ......................................... 22

        *A.*    *Standard Of Review* ............................................................. 22

**TABLE OF CONTENTS (continued):**                                    **PAGE**

      B.     *Viewed In The Light Most Favorable To The*
             *Government, The Evidence Was Sufficient To*
             *Support The Jury's Finding That Legins Knowingly*
             *Or Willfully Made False And Material Statements*
             *To Government Agents Investigating His Alleged*
             *Sexual Activity With B.L.* ........................................... 23

II     THE DISTRICT COURT PROPERLY APPLIED AN
       EIGHT-YEAR STATUTORY MAXIMUM SENTENCE
       TO LEGINS'S SECTION 1001 CONVICTION ............................... 28

      A.     *Standard Of Review* ................................................. 28

      B.     *Legins Was Subject To The Maximum Eight-Year*
             *Sentence Because The FBI-OIG Investigation That*
             *He Obstructed Related To A Crime Of Sexual Abuse*
             *Under Chapter 109A, And The Government's Failure*
             *To Notify Him Of This At Arraignment Did Not Violate*
             *His Due Process Rights* ........................................... 29

III    LEGINS'S 54-MONTH SENTENCE WAS
       PROCEDURALLY AND SUBSTANTIVELY
       REASONABLE ................................................................. 34

      A.     *Standard Of Review* ................................................. 34

      B.     *The District Court's Decisions To Grant The*
             *Government's Motion For An Upward Variance*
             *From Legins's Sentencing Guidelines Range And*
             *To Sentence Him To 54 Months' Imprisonment*
             *Were Reasonable* ..................................................... 35

CONCLUSION ..................................................................... 44

STATEMENT REGARDING ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**CASES:**                                                                 **PAGE**

*Apprendi* v. *New Jersey*, 530 U.S 466 (2000) ................................................ *passim*

*Gall* v. *United States*, 552 U.S. 38 (2007) ....................................... 35, 41

*Irizarry* v. *United States*, 553 U.S. 708 (2008)........................................41

*United States* v. *Alerre*, 430 F.3d 681 (4th Cir. 2005),
    cert. denied, 547 U.S. 1113 (2006).................................................23

*United States* v. *Angle*, 254 F.3d 514 (4th Cir.) (en banc),
    cert. denied, 534 U.S. 937 (2011).................................................. 33

*United States* v. *Ashley*, 606 F.3d 135 (4th Cir.),
    cert. denied, 562 U.S. 987 (2010)..................................................23

*United States* v. *Bennett*, 698 F.3d 194 (4th Cir. 2012),
    cert. denied, 568 U.S. 1218 (2013)................................................29

*United States* v. *Burgos*, 94 F.3d 849 (4th Cir. 1996) (en banc),
    cert. denied, 519 U.S. 1151 (1997)................................................23

*United States* v. *Cox*, 744 F.3d 305 (4th Cir. 2014) ........................................ 36-37

*United States* v. *Diosdado-Star*, 630 F.3d 359 (4th Cir.),
    cert. denied, 563 U.S. 1027 (2011)................................................ 34-35, 42

*United States* v. *Ferrel*, 603 F.3d 758 (10th Cir.),
    cert. denied, 562 U.S. 971 (2010)..................................................31

*United States* v. *Green*, 599 F.3d 360 (4th Cir.),
    cert. denied, 562 U.S. 913, and
    cert. denied, 562 U.S. 936 (2010)..................................................22

*United States* v. *Grubbs*, 585 F.3d 793 (4th Cir. 2009),
    cert. denied, 559 U.S. 1022 (2010)................................................ 37-38, 43

- iii -

**CASES (continued):**                                                             **PAGE**

*United States* v. *Hamilton*, 699 F.3d 356 (4th Cir. 2012)...........................................24

*United States* v. *Hamlin*, 319 F.3d 666 (4th Cir. 2003)...........................................28

*United States* v. *Hampton*, 441 F.3d 284 (4th Cir. 2006)................................ 36, 41

*United States* v. *Hargrove*, 701 F.3d 156 (4th Cir. 2012) .......................................41

*United States* v. *Hernandez-Villanueva*, 473 F.3d 118 (4th Cir. 2007) .................35

*United States* v. *Hudson*, 673 F.3d 263 (4th Cir.),
    cert. denied, 568 U.S. 859 (2012)...................................................................32

*United States* v. *Jeffers*, 570 F.3d 557 (4th Cir.),
    cert. denied, 558 U.S. 1033 (2009)..................................................................23

*United States* v. *Kiulin*, 360 F.3d 456 (4th Cir. 2004)............................................36

*United States* v. *Lampkin*, 730 F. App'x 144 (4th Cir. 2018) ................................31

*United States* v. *Legree*, 205 F.3d 724 (4th Cir. 2000),
    cert. denied, 531 U.S. 1080 (2001)..................................................................28

*United States* v. *Louthian*, 756 F.3d 295 (4th Cir.),
    cert. denied, 574 U.S. 960 (2014).............................................................. 25, 28

*United States* v. *Myers*, 280 F.3d 407 (4th Cir.),
    cert. denied, 537 U.S. 852 (2002)...................................................................33

*United States* v. *Nance*, 957 F.3d 204 (4th Cir.),
    cert. denied, No. 20-5825, 2020 WL 6385951 (Nov. 2, 2020) ............. 36, 39

*United States* v. *Owen*, 407 F.3d 222 (4th Cir. 2005),
    cert. denied, 546 U.S. 1098 (2006)..................................................................31

*United States* v. *Rivera-Santana*, 668 F.3d 95 (4th Cir.),
    cert. denied, 568 U.S. 889 (2012)............................................................. 39, 41

**CASES (continued):** **PAGE**

*United States* v. *Thompson*, 421 F.3d 278 (4th Cir. 2005),
cert. denied, 547 U.S. 1005 (2006) .................................................. 35

*United States* v. *Washington*, 743 F.3d 938 (4th Cir. 2014) ........................... 35, 41

**STATUTES:**

18 U.S.C. Ch. 109A ....................................................................... 29-30

18 U.S.C. 242 ................................................................................. 10

18 U.S.C. 1001 ............................................................................. *passim*

18 U.S.C. 1001(a) ........................................................................... 11

18 U.S.C. 2241 ............................................................................... 12

18 U.S.C. 2241(a) ......................................................................... *passim*

18 U.S.C. 2243 ............................................................................... 12

18 U.S.C. 2243(b) ........................................................................ *passim*

18 U.S.C. 2244 ............................................................................... 16

18 U.S.C. 2244(a) ........................................................................... 18

18 U.S.C. 3231 ................................................................................. 1

18 U.S.C. 3553(a) ........................................................................ *passim*

18 U.S.C. 3553(a)(1) ................................................................. 19, 36, 42

18 U.S.C. 3553(a)(2)(A) ............................................................. 19, 36, 42

18 U.S.C. 3553(a)(2)(B) ............................................................. 19, 36, 42

18 U.S.C. 3553(a)(2)(C) ............................................................. 19, 36, 42

**STATUTES (continued):**                                                     **PAGE**

18 U.S.C. 3553(a)(2)(D) ................................................................... 19, 36

28 U.S.C. 1291 ...................................................................................2

**RULES:**

Fed. R. Crim. P. 10................................................................. 13, 21, 30

Fed. R. Crim. P. 10(a) ............................................................... 11, 30

Fed. R. Crim. P. 11.......................................................................13

Fed. R. Crim. P. 29(c) ..................................................................14

**GUIDELINES:**

Sentencing Guidelines § 2A3.4(b)(3) ........................................18

Sentencing Guidelines § 2J1.2 ...................................... 15-17, 39

Sentencing Guidelines § 2J1.2(a) ..............................................16

Sentencing Guidelines § 2J1.2(b)(1)(A) ............................. 16, 32

Sentencing Guidelines § 2J1.2(c)(1)...........................................17

Sentencing Guidelines § 2X3.1.......................................... 15-16

Sentencing Guidelines § 5K2.7....................................................39

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————————

No. 20-4390

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

CHIKOSI LEGINS,

Defendant-Appellant

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

———————————————

BRIEF FOR THE UNITED STATES AS APPELLEE

———————————————

## STATEMENT OF JURISDICTION

This appeal is from a district court's final judgment in a criminal case.  The

district court had jurisdiction under 18 U.S.C. 3231.  The court entered final

judgment against defendant Chikosi Legins on July 20, 2020.  J.A. 1061-1065.[1]

---

[1] "J.A. ___" refers to page numbers in the Joint Appendix filed by
defendant-appellant Chikosi Legins.  "S.J.A. __" refers to page numbers in the
Supplemental Joint Appendix. "Br. ___" refers to page numbers in Legins's
opening brief.  "Doc. __, at __" refers, respectively, to the document recorded on
the district court docket sheet and page number.

- 2 -

Legins filed a timely notice of appeal on July 27, 2020.  J.A. 1065.1.  This Court
has jurisdiction under 28 U.S.C. 1291.

## STATEMENT OF THE ISSUES

1.  Whether sufficient evidence supported Legins's conviction for false
statements under 18 U.S.C. 1001.

2.  Whether the district court properly applied an eight-year statutory
maximum sentence to Legins's Section 1001 conviction.

3.  Whether Legins's 54-month sentence was procedurally and substantively
reasonable.

## STATEMENT OF THE CASE

This appeal arises from the prosecution of a federal correctional officer,
Chikosi Legins, for his alleged sexual abuse of an inmate and his subsequent false
statements during an internal investigation of the alleged abuse.  As set forth
below, a jury convicted Legins of one count of making false statements in violation
of 18 U.S.C. 1001 and acquitted him of the substantive sex-offense charges.  The
district court denied Legins's post-trial motion to set aside the verdict, determined
that the applicable statutory maximum sentence for the Section 1001 conviction
was eight years, and sentenced Legins to 54 months' imprisonment.

- 3 -

1.    *Statement Of The Facts*

   a.    *Legins's Alleged Sexual Activity With B.L.*

   According to B.L.,[2] an inmate housed at the Federal Correctional Institution

in Petersburg, Virginia (FCI Petersburg), on the evening of May 10, 2018, he went

to the common area of the F-South housing unit to hang flyers.  J.A. 248-250.

After B.L. was done and wanted to return to his D-North housing unit, senior

correctional officer Legins told B.L. that he would walk B.L. through the officers-

only unit team area hallway connecting the F-South housing unit (where Legins

had been assigned to work that night) and F-North housing unit.  J.A. 248-250; see

J.A. 129-131, 133-134, 145-146, 460-461, 519-520, 580, 587-588, 630-632.  B.L.

testified that while they were walking through the hallway, Legins instructed him

to enter the unit secretary's office, and B.L. complied.  J.A. 251, 359; see J.A. 460.

According to B.L., Legins followed him into the office and proceeded to orally and

anally rape him.  J.A. 251-257, 359.  After the alleged assault, Legins escorted

B.L. to the F-North housing unit, and B.L. returned to his cell, where he told his

cellmate what had just happened.  J.A. 257-258.

   At the urging of his cellmate, B.L. went to the FCI Petersburg lieutenant's

office that same evening and reported the alleged rape to an operational lieutenant.

---

[2]  While B.L. was identified by name and testified at trial, we identify him
by his initials throughout the brief, consistent with the indictment and Legins's
opening brief.

- 4 -

J.A. 258-263, 377-378.  Following his report, B.L. was escorted to the prison's

medical facility for a physical examination and interviews with a nurse and a

psychologist.  J.A. 263-265, 268-271, 382.  B.L. repeated his account of the assault

to the nurse.  J.A. 630-632.  During this process, Legins took the "unusual" step of

calling the nurse a few times to ask for medicine and to inquire about B.L.'s

whereabouts, despite never having called her before, and despite the prison's

policy against providing nonemergency medical care to staff.  J.A. 263, 271, 382-

385, 513-514, 516-518, 633-635.  Legins made similar telephonic inquiries

regarding B.L.'s location to the lieutenant's office and to the correctional officer

assigned to B.L.'s housing unit—a request that several officers found unusual

because Legins was not assigned to B.L.'s housing unit.  J.A. 383-385, 470-472,

579-581.

When B.L. was escorted from the medical facility back to the lieutenant's

office, he heard Legins call out, "Don't believe anything he tells you."  J.A. 271-

272.  A correctional officer who was escorting B.L., and to whom B.L. told that he

had been raped by an unnamed FCI Petersburg staff member, heard a voice that he

believed was Legins's exclaim, "You've got to be kidding me."  J.A. 458, 460,

466-470.

Upon his return to the lieutenant's office, B.L. gave a statement to a

lieutenant assigned to Special Investigative Services, who completed an

- 5 -

administrative affidavit documenting his allegations, which included B.L.'s statement that in March he performed oral sex on Legins in an elevator.  J.A. 80-82, 273-275, 382, 817.10-817.12.  In addition to describing the assault that occurred that evening, B.L. also alleged that, just two months earlier in March, Legins forced B.L. to perform oral sex on him in an elevator located in a hallway connecting the F-South and F-North housing units.  J.A. 221-223, 227-234, 505.

B.L. was subsequently transported by FCI Petersburg officers to a Richmond-area hospital, where two nurses performed a rape kit and asked him about the alleged assault.  J.A. 39, 44-60, 83-86, 275-277.  B.L. told the nurses that Legins had orally and anally raped him in an office area in the prison.  J.A. 46. One day later, the lieutenant who took B.L.'s affidavit notified a Department of Justice Office of the Inspector General (OIG) agent of B.L.'s allegations.  J.A. 183-184.  B.L. subsequently spoke with Federal Bureau of Investigation (FBI) and OIG agents regarding the alleged sexual assaults.  J.A. 350-351, 364-365.

Clothing B.L. was wearing during both alleged assaults and the rape kit performed on him after the May incident were submitted to the FBI Laboratory in Quantico, Virginia for DNA analysis.  J.A. 32, 58-62, 240-242, 249, 266-268, 400-401, 406-407.  Federal agents subsequently obtained a warrant for and collected Legins's DNA.  J.A. 372-373.  DNA testing by a forensic examiner in the FBI's DNA case work unit revealed the presence of Legins's DNA on several clothing

- 6 -

items from both alleged assaults, including the inside of the underwear and the outside of the shorts that B.L. was wearing during the May incident, and the sweatshirt that B.L. was wearing during the March incident, as well as on the rape kit swabs of B.L.'s anus.  J.A. 408-422.

   b.   *Legins's False Statements During The Investigation*

In June 2018, two federal agents, one from the FBI and another from OIG, traveled to FCI Petersburg to interview Legins about his activities with B.L.  J.A. 481-482, 485, 488.  At the outset of the interview, the agents told Legins that the interview was voluntary and placed him under oath.  J.A. 485-487.  The agents also repeatedly explained to Legins that making false statements to federal agents constituted a violation of Title 18, Section 1001, and could result in criminal prosecution.  J.A. 485-486, 491, 510.

During the interview, Legins acknowledged escorting B.L. on the night of the alleged assault; admitted taking B.L. from the F-South common area into the locked, unattended, officers-only (and camera-less) unit team corridor between the F-South and F-North housing units; and admitted taking B.L. into the unmonitored and unattended unit secretary's office along the way for several minutes.  J.A. 491-495; see J.A. 129-132, 137-138, 378-379, 460-461, 572-573, 589, 603.  Legins described his actions that evening as "complacent and stupid."  J.A. 494, 506. Several FCI Petersburg correctional officers and lieutenants subsequently

- 7 -

confirmed the impropriety of a correctional officer taking an inmate into the unit

team area and the unit secretary's office, particularly after hours when the unit

team was not present.  J.A. 130-131, 137-138, 379, 461, 589, 603-604.

Legins told the agents that he attempted to use a computer and printer in the

unit secretary's office but was unable to do so because he could not enter his PIN

number after inserting his PIV card into the PIV card reader and entering his BOP

number because, as he subsequently learned, "the numbers lock was on."  J.A. 491,

493-494, 500-501, 503.  However, Legins's account was later contradicted by the

former FCI Petersburg information technology manager, who examined the

records of the specific computer that Legins claimed to have attempted to use.  J.A.

545-546.  The technology manager determined that, contrary to Legins's story,

neither he nor any other individual attempted to access that computer during the

time frame of the May incident.  J.A. 545-547, 551-554, 556-557.  He also rejected

as implausible the specific scenario that Legins claimed prevented him from using

the computer—that he was able to insert his PIV card into the PIV card reader and

enter his BOP number, but then was unable to enter his PIN number.  J.A. 548.

The agents asked Legins whether he had engaged in any sexual act with

B.L., with or without the inmate's consent, in the unit secretary's office.  J.A. 494-

495, 497-499, 503, 508-509, 526.  Legins told the agents that during his

unsuccessful computer logon attempt, his only interaction with B.L. was "just

- 8 -

conversation" and repeatedly denied that any sexual activity with B.L. occurred in that room. J.A. 492, 495, 497-499, 504, 508-510, 526. He also emphatically denied B.L.'s allegation that they had a sexual encounter in an elevator two months earlier, claiming that he was never in an elevator alone with B.L. J.A. 505-507. Indeed, in addition to denying ever engaging in sexual acts with B.L., Legins repeatedly denied engaging in any sexual activity, consensual or non-consensual, with any FCI Petersburg inmate at any time. J.A. 499, 504, 508, 510, 525-526.

In denying the allegations of sexual activity with inmates, Legins told the federal agents that his health conditions rendered him incapable of any sexual activity—*i.e.*, he had "no sexual desire" and required medication to become aroused. J.A. 496. Legins further assured the agents that they could believe his account of what happened during the May incident and also his denials of ever having engaged in any sexual interaction with any FCI Petersburg inmates because "I don't lie." J.A. 491. When the agents confronted Legins about how he could explain the possible recovery of his semen from FCI Petersburg, he initially stated that he could not explain that occurrence before claiming to recall that the day before the alleged assault he took medication and masturbated in the staff-only bathroom in the unit secretary's office. J.A. 509, 511-512, 521, 523-524; see J.A. 130. Legins speculated that the cleaning detail the following day could have

- 9 -

recovered the semen, but could not explain to the agents how his DNA could have been recovered from B.L.  J.A. 512, 524-525.

    c.    *Legins's Related Obstructive Conduct*

Legins attempted to involve other FCI Petersburg correctional officers in his cover-up of the May incident.  Immediately after the incident, when the unit team area hallway between the F-South and F-North housing units was blocked off with police barrier tape, an "overly nervous" Legins told the correctional officer assigned to the F-North unit that he escorted B.L. directly from F-South to F-North to post material on a bulletin board.  J.A. 605-606.  Two nights later, Legins asked that officer to write a statement to that effect and to state that Legins and B.L. were in the corridor connecting the two housing units for only one minute, but the officer refused because he lacked this knowledge.  J.A. 608, 611-612.

In addition, one day after his interview with federal agents, having conceded that he stopped in the unit secretary's office with B.L., Legins repeated to a fellow correctional officer the account that he told the investigators of masturbating in the staff-only bathroom in the unit secretary's office.  J.A. 567, 570.  According to that officer, Legins also stated that he subsequently saw B.L. and another inmate unattended in the staff-only bathroom in which Legins said he had masturbated the day before.  J.A. 570.  The officer described this scenario as impossible because the doors to the unit team area are locked on both sides and further stated that he

- 10 -

would call for assistance if he did see inmates in the staff-only bathroom because inmates are not supposed to be in that area without an officer escort.  J.A. 572-573; see J.A. 617.  Another colleague of Legins confirmed that this situation would be concerning and worthy of investigation if it occurred.  J.A. 588.

2.    *Procedural History*

a.    *Indictment And Verdict*

In July 2019, a federal grand jury in the Eastern District of Virginia returned a five-count indictment charging Legins on several counts arising out of his alleged sexual activity with B.L.  J.A. 25-29.  Count 1 charged Legins with deprivation of rights under color of law for physically coercing B.L. into sexual activity during the May incident, in violation of 18 U.S.C. 242; Count 2 charged Legins with aggravated sexual abuse relating to that same misconduct, in violation of 18 U.S.C. 2241(a); and Counts 3 and 4 charged him with sexual abuse of a ward for knowingly engaging in a sexual act with B.L. during the May incident and a separate incident on March 16, 2018, respectively, both in violation of 18 U.S.C. 2243(b).  J.A. 26-27.  Count 5 of the indictment (the only count on which Legins was convicted) charged Legins with making false statements for knowingly and willfully making two materially false, fictitious, and fraudulent statements and misrepresentations to FBI and OIG agents relating to their investigation of the alleged sexual activity—specifically, falsely denying that he had engaged in a

- 11 -

sexual act with any FCI Petersburg inmate at any time and falsely stating that on

May 10, 2018, he attempted to use a computer and printer while engaged in "just

conversation" with B.L. when they were alone in an unattended office with no

surveillance cameras—in violation of 18 U.S.C. 1001.[3]  J.A. 28.

At his arraignment, Legins received a copy of the indictment and a notice of

the substance of the charges against him.  S.J.A. 9.  He also received an

opportunity to answer those charges and entered a plea of not guilty to all counts in

the indictment.  S.J.A. 3, 9; see also Fed. R. Crim. P. 10(a).  Also at arraignment,

the government informed Legins and the court that a conviction on Count 5 carried

a maximum penalty of five years' imprisonment.  J.A. 821; S.J.A. 4.  This

representation was incorrect, as Section 1001 provides a maximum penalty of eight

years' imprisonment for false statements made in any matter that "relates to an

offense under chapter 109A," which includes the conduct charged in Counts 2 (18

---

[3]  Section 1001 provides, in relevant part:

> Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully  *  *  *  makes any materially false, fictitious, or fraudulent statement or representation  *  *  *  shall be fined under this title, imprisoned not more than 5 years.  If the matter relates to an offense under chapter 109A  *  *  * , then the term of imprisonment imposed under this section shall be not more than 8 years.

18 U.S.C. 1001(a).

- 12 -

U.S.C. 2241(a)), 3 (18 U.S.C. 2243(b)), and 4 (18 U.S.C. 2243(b)) of the
indictment.  J.A. 821; S.J.A 4.

　　After a five-day trial, the jury convicted Legins under Section 1001 for
knowingly and willfully making both materially false statements to the FBI and
OIG agents concerning their investigation into Legins's sexual activity with B.L.
(Count 5) and acquitted him on the four substantive counts of sexual abuse (Counts
1 through 4).  J.A. 818-820.

　　b.　　*Post-Trial Proceedings*

　　i.  Following the jury's verdict, the district court requested that the parties
brief whether, despite the government's position at Legins's arraignment that the
statutory maximum sentence for a Section 1001 conviction was five years'
imprisonment, he may be sentenced up to eight years' imprisonment for his false
statements because they occurred in a matter relating to "an offense under chapter
109A."  J.A. 821-822.  After receiving the parties' briefs, the district court agreed
with the government that Section 1001's eight-year statutory maximum sentence
applied to Legins because the matter described in Count 5—namely, the FBI-OIG
investigation of Legins's alleged sexual activity with B.L.—"undoubtedly related
to offenses under chapter 109A, including violations of 18 U.S.C. § 2241
[aggravated sexual abuse] and 2243 [sexual abuse of a ward], because determining
whether those offenses occurred constituted the 'purpose' of the FBI and OIG's

- 13 -

investigation." S.J.A. 7.  The court further determined that an increase in the statutory maximum sentence did not raise concerns under *Apprendi* v. *New Jersey*, 530 U.S 466 (2000), because when the jury found that Legins falsely denied that he engaged in sexual acts with any FCI Petersburg inmate at any time, it necessarily found that Legins "engaged in sexual acts with inmates, which chapter 109A prohibits." S.J.A. 7-8.

The district court rejected Legins's argument that the government's misstatement of the maximum penalty for Count 5 violated his rights at arraignment.  First, the court found that Legins's arraignment satisfied the requirements listed in Federal Rule of Criminal Procedure 10.  S.J.A. 9.  The court then observed that the absence of a requirement in Rule 10 that the government disclose the maximum penalty during an arraignment and the inclusion of this requirement in Federal Rule of Criminal Procedure 11, which governs pleas, "suggests that the failure to disclose the maximum penalty during an arraignment does not violate a defendant's substantive rights." S.J.A. 9-10.  The court further concluded that Legins suffered no prejudice caused by the government's misstatement of his maximum penalty because he pleaded not guilty and proceeded to trial, where he faced other charges with far higher penalties.  S.J.A. 10.

- 14 -

ii.  Legins moved the district court under Federal Rule of Criminal

Procedure 29(c) to set aside the guilty verdict on the Section 1001 count, which the

court denied.  J.A. 823-830, 841-856.

First, the court rejected Legins's argument that the acquittals on Counts 1

through 4 undermined its guilty verdict on Count 5, explaining that Supreme Court

precedent does not mandate that verdicts be consistent and precludes "engag[ing]

in  *  *  *  speculation as to the jury's intentions."  J.A. 847-849.  Second, the court

found that "substantial and competent evidence" supported the jury's guilty verdict

on Count 5.  J.A. 849-855.  The court explained that the elements required to prove

a violation of Section 1001—falsity, willfulness, and materiality—were

established respectively by the government's evidence showing that Legins

engaged in sexual activity at least once with B.L.; Legins received several

warnings of the consequences of lying; and the investigation focused on allegations

that Legins committed the precise conduct he denied.  J.A. 849-852.  The court

further explained that the testimony of the government's computer expert was

sufficient for a jury to find that Legins knowingly and willfully misrepresented that

he attempted to log on to a computer in the unit secretary's office, and that this

statement was material because Legins's computer alibi was "at least capable of

influencing agency action, namely:  evidence of the FBI and OIG's surrounding

- 15 -

investigation into B.L.'s allegations regarding what happened in the Unit

Secretary's Office on May 10, 2018." J.A. 854-855.

c.    *Sentencing*

i.  In late June 2020, the district court held a hearing addressing Legins's

objection to the Guidelines calculation in the Presentence Investigation Report

(PSR). J.A. 881-933. First, the court reiterated its earlier determination that the

statutory maximum sentence for Legins's Section 1001 conviction was eight years'

imprisonment, because "the underlying offenses that [Legins] was convicted of

lying about involved Chapter 109A"—*i.e.*, sexual-abuse offenses—and because the

jury made a special finding that his false statements involved a sexual act, as

required by *Apprendi* v. *New Jersey*, 530 U.S 466 (2000). J.A. 919.

Second, the court sustained Legins's objection to the PSR's use of a cross-

reference to aggravated sexual abuse as the underlying offense whose investigation

he obstructed pursuant to Sentencing Guidelines § 2X3.1 (Accessory After the

Fact) to calculate his Guidelines range under Sentencing Guidelines § 2J1.2

(Obstruction of Justice), the applicable guideline for violations of Section 1001

that carry a maximum penalty of eight years' imprisonment.[4] J.A. 919-920; S.J.A.

---

[4]  Under the cross-reference in subpart (c)(1) of Section 2J1.2, "[i]f the offense involved obstructing the investigation  *  *  *  of a criminal offense," and a higher offense level would result, courts apply Sentencing Guidelines § 2X3.1 (Accessory After the Fact), which provides a base offense level of "6 levels lower

(continued…)

- 16 -

11.  The court then found by a preponderance of the evidence that Legins had

sexual contact with B.L. in violation of 18 U.S.C. 2244 during the March

incident—an offense that he was not charged with committing—and committed

sexual abuse of a ward in violation of 18 U.S.C. 2243(b) during the May incident.

J.A. 920-923.  The court ordered the Probation Office to prepare an amended

Presentence Investigation Report (amended PSR) using a cross-reference to sexual

abuse of a ward as the underlying offense grouped with abusive sexual contact,

instead of aggravated sexual abuse, to calculate Legins's offense level under

Section 2J1.2.[5]  J.A. 923-926, 931-932.

    ii.  Legins's amended PSR calculated a total offense level of 18.  J.A. 1084.

First, the amended PSR used the base offense level of 14 for obstruction of justice

under Sentencing Guidelines § 2J1.2(a).  J.A. 1082.  Next, as required by

Sentencing Guidelines § 2J1.2(b)(1)(A), the amended PSR added four levels

because Legins's conviction concerned a matter related to a sex offense under

_____

(…continued)
than the offense level for the underlying offense."  The PSR's use of aggravated
sexual abuse as the underlying offense and application of Section 2X3.1 resulted in
a total offense level of 30, which is higher than the offense total level of 18
calculated using Section 2J1.2's base offense level of 14 for obstruction of justice.
J.A. 1069-1070.

    [5]  The amended PSR is the Second Addendum to the Presentence Report.
See J.A. 1082.  We call this document the "amended PSR" for ease of reference.

- 17 -

chapter 109A of Title 18, and thus carried a statutory maximum term of eight years' imprisonment.  J.A. 1082.  The total offense level of 18 combined with Legins's criminal history category I yielded a Sentencing Guidelines range of 27 to 33 months' imprisonment.[6]  J.A. 1084.

iii.  In July 2020, the district court held a hearing on the parties' variance motions (J.A. 964-1034) and issued a memorandum opinion memorializing its findings and conclusions (J.A. 1035-1060).  First, the court rejected Legins's request for a downward variance, finding that the government proved by a preponderance of the evidence that he committed sexual abuse of a ward in violation of 18 U.S.C. 2243(b) during the May incident.  J.A. 1053.  Next, the court agreed with the government that grounds existed for an upward variance.  J.A. 1053.  The court explained that the amended PSR's calculation of Legins's Guidelines range did not adequately account for his abusive sexual contact during the March incident; the extent or premeditative nature of his obstructive conduct following his sexual misconduct during the May incident; his premeditation in committing the charged offenses during the March and May incidents; and his past

---

[6]  The cross-reference in Section 2J1.2(c)(1) did not apply because using sexual abuse of a ward as the underlying offense grouped with abusive sexual contact would result in a lower total offense level than the total offense level calculated using Section 2J1.2's base offense level of 14 for obstruction of justice.  J.A. 1083-1084.

- 18 -

inappropriate sexual conduct and subsequent cover-up efforts in his prior employment as a Richmond sheriff's deputy.  J.A. 1053-1057.

In determining the appropriate upward variance, the district court found significant the offense level's failure to account for Legins's related misconduct from the March incident—*i.e.*, abusive sexual contact in violation of 18 U.S.C. 2244(a).  J.A. 1057.  The court calculated a total offense level of 14 for this offense under Sentencing Guidelines § 2A3.4(b)(3), and then combined it with Legins's criminal history category I to yield a Guidelines range of 15 to 21 months' imprisonment.  The court then added this range to the amended PSR's calculated Guidelines range of 27 to 33 months' imprisonment to reach a sum of 42 to 54 months' imprisonment.  J.A. 1057-1058.

The court then observed that this range fell between the Guidelines ranges for offense levels 22 and 23 and determined that the latter, with a range of 46 to 57 months' imprisonment (taking into account Legins's criminal history category I) better accounted for his offense and related conduct.  J.A. 1058.  Within this range, the court concluded that a sentence of 54 months' imprisonment and three years' supervised release, including sex offender treatment, was sufficient but not greater than necessary to comply with the mandatory sentencing factors set forth in 18 U.S.C. 3553(a).  J.A. 1058.  In particular, the court concluded that the 54-month sentence captured the seriousness of Legins's conduct, the manner in which he

- 19 -

committed his crime of conviction, and his history and characteristics (Sections

3553(a)(1), (a)(2)(A)); afforded adequate deterrence to him and similarly situated

correctional officers who violate their positions of public trust (Section

3553(a)(2)(B)); and was necessary to protect the public given Legins's repeated

incidences of sexual misconduct (Section 3553(a)(2)(C)).  J.A. 1058; see J.A.

1028-1030.  The court further determined that requiring Legins to undergo sex

offender treatment while on supervised release will ensure that Legins receives

effective correctional treatment (Section 3553(a)(2)(D)).  J.A 1058; see J.A. 1030.

## SUMMARY OF THE ARGUMENT

This Court should affirm Legins's conviction and sentence.  Legins's

challenges to the sufficiency of the evidence, the imposition of the applicable

maximum statutory cap, and the procedural and substantive reasonableness of his

sentence all lack merit.

1.  The evidence was more than sufficient to support Legins's conviction for

false statements under 18 U.S.C. 1001 based on his false statements to FBI and

OIG agents investigating his alleged sexual activity with B.L.  To establish a

violation of Section 1001, the government must prove that (1) the defendant made

a false statement in a matter involving a governmental agency; (2) the defendant

acted knowingly or willfully; and (3) the false statement was material to a matter

within the jurisdiction of the agency.  Legins challenges the sufficiency of the

- 20 -

evidence only with respect to the first element, and his argument is meritless.

Contrary to Legins's assertion, the jury's acquittal of him on the substantive sex-abuse counts does not mandate his acquittal on the Section 1001 count, because those counts required proof of elements that Section 1001 did not, and because it is well-settled that a defendant cannot challenge his conviction based on inconsistent verdicts.  Moreover, the evidence was more than sufficient to establish that Legins (1) falsely denied he had engaged in a sexual act with any inmate at any time at FCI Petersburg, and (2) falsely stated that on May 10, 2018, he attempted to use a computer and printer while engaged in "just conversation" with B.L. when they were alone in an unattended office with no surveillance cameras.  The jury reasonably could have concluded that these statements were false based on B.L.'s testimony and corroborating DNA evidence that Legins engaged in a sexual act with him, and expert testimony contradicting Legins's claim that he attempted to use a computer on the night of the sexual encounter.

2.  Section 1001 provides that a defendant convicted of making false statements is generally subject to a statutory maximum sentence of five years' imprisonment, but may be sentenced to a term of imprisonment of up to eight years "[i]f the matter [in which he made a false statement] relates to an offense under chapter 109A."  18 U.S.C. 1001.  The district court correctly applied Section 1001's eight-year statutory maximum sentence to Legins's Section 1001

USCA4 Appeal: 20-4390     Doc: 36     Filed: 01/26/2021     Pg: 28 of 53

- 21 -

conviction because his false statements were made to FBI and OIG agents during

an investigation of his suspected sexual abuse of an inmate (B.L.), which "relates

to" possible violations of 18 U.S.C. 2241(a) (aggravated sexual abuse) and 18

U.S.C. 2243(b) (sexual abuse of a ward), and which fall under chapter 109A of

Title 18 (Sexual Abuse).  The government's failure to notify Legins at his

arraignment of the correct statutory maximum sentence for the charged violation of

Section 1001 did not violate Legins's due process rights or otherwise prejudice

him, because he was not entitled to this information under Federal Rule of

Criminal Procedure 10.  In any event, the government's misstatement would not

have changed Legins's decision to proceed to trial because he was facing two other

counts that carried potential life sentences.  Moreover, the district court's

determination that Legins was subject to a term of imprisonment of up to eight

years did not implicate *Apprendi* v. *New Jersey*, 530 U.S. 466 (2000), because his

sentence of 54 months' imprisonment was lower than Section 1001's prescribed

statutory maximum sentence of five years' imprisonment.

3.  Legins's 54-month sentence was procedurally and substantively

reasonable.  First, the district court's decision to vary upward from Legins's

Sentencing Guidelines range, and the means by which it calculated a new

Guidelines range, were procedurally reasonable.  In making these decisions, the

court reasonably relied upon Legins's uncharged abusive sexual conduct during the

- 22 -

March incident and upon his premeditated and obstructive conduct during the May

incident, both of which were proven by a preponderance of the evidence.  Second,

the district court's sentence of 54 months' imprisonment, which was less than two

years above the top of Legins's applicable Guidelines range, was substantively

reasonable.  The court properly considered and weighed Section 3553(a)'s

sentencing factors and reasonably relied upon Legins's acquitted conduct during

the May incident, which the court found was proven by a preponderance of the

evidence.

## ARGUMENT

## I

## SUFFICIENT EVIDENCE SUPPORTED LEGINS'S CONVICTION UNDER 18 U.S.C. 1001

*A.    Standard Of Review*

This Court "review[s] *de novo* the district court's denial of a motion for

judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal

Procedure."  *United States* v. *Green*, 599 F.3d 360, 367 (4th Cir.), cert. denied, 562

U.S. 913, and cert. denied, 562 U.S.C. 936 (2010).  Where, as here, the defendant's

Rule 29 motion is based on the sufficiency of the evidence, this Court is "obliged

to sustain a guilty verdict if, viewing the evidence in the light most favorable to the

Government, it is supported by 'substantial evidence'"—*i.e.*, "evidence that a

reasonable finder of fact could accept as adequate and sufficient to support a

- 23 -

conclusion of a defendant's guilt beyond a reasonable doubt." *United States* v.

*Alerre*, 430 F.3d 681, 693 (4th Cir. 2005) (quoting *United States* v. *Burgos*, 94

F.3d 849, 862 (4th Cir. 1996) (en banc), cert. denied, 519 U.S. 1151 (1997)), cert.

denied, 547 U.S. 1113 (2006). This Court does not "assess witness credibility, and

* * * assume[s] that the jury resolved any conflicting evidence in the

prosecution's favor." *United States* v. *Jeffers*, 570 F.3d 557, 565 (4th Cir.), cert.

denied, 558 U.S. 1033 (2009). "A defendant bringing a sufficiency challenge

[thus] bears a heavy burden," and "[r]eversal for insufficient evidence is reserved

for the rare case where the prosecution's failure is clear." *United States* v. *Ashley*,

606 F.3d 135, 138-139 (4th Cir.) (internal quotation marks and citation omitted),

cert. denied, 562 U.S. 987 (2010).

B.      *Viewed In The Light Most Favorable To The Government, The Evidence*
        *Was Sufficient To Support The Jury's Finding That Legins Knowingly Or*
        *Willfully Made False And Material Statements To Government Agents*
        *Investigating His Alleged Sexual Activity With B.L.*

Count 5 of the indictment charged Legins with making false statements in

violation of 18 U.S.C. 1001 when he (1) falsely denied that he had engaged in a

sexual act with any inmate at any time at FCI Petersburg, and (2) falsely stated that

on May 10, 2018, he attempted to use a computer and printer while engaged in

"just conversation" with B.L. when they were alone in an unattended office with

no surveillance cameras.

- 24 -

To establish a violation of Section 1001, the government must prove beyond a reasonable doubt that "(1) the defendant made a false statement in a matter involving a governmental agency; (2) the defendant acted knowingly or willfully; and (3) the false statement was material to a matter within the jurisdiction of the agency." *United States* v. *Hamilton*, 699 F.3d 356, 362 (4th Cir. 2012). Legins challenges the sufficiency of the evidence with respect to the first element only. He argues that the jury could not have reasonably found that his statements to FBI and OIG investigators regarding his sexual conduct with any inmate and his conduct with B.L. during the May incident were false because (1) he was acquitted of the sex offenses charged in Counts 1 through 4 of the indictment, and (2) the evidence showing that he engaged in a sexual act with B.L. was not reliable or credible. As set forth below, those arguments fail.

1. Legins contends (Br. 14-16) that the jury's acquittal of him on the substantive counts of sexual abuse, Counts 1 through 4, undermines the sufficiency of the evidence supporting the jury's verdict on the Section 1001 count because it demonstrates that the jury rejected B.L.'s testimony that Legins orally and anally raped him the unit secretary's office in May and forced him to perform oral sex on him in an elevator in March. That is not so. Because the sex-abuse counts required proof of elements that the Section 1001 count did not, such as lack of consent, force, or lack of custodial or supervisory authority, the jury had a basis for

- 25 -

acquitting Legins on those counts while convicting him on the Section 1001 count.
See *United States* v. *Louthian*, 756 F.3d 295, 305 (4th Cir.) (verdicts are not
inconsistent where "there are a number of reasonable explanations for the
verdicts"), cert. denied, 574 U.S. 960 (2014). In any event, any inconsistency
between the verdicts is irrelevant to the issue of whether a reasonable jury could
find that Legins was guilty beyond a reasonable doubt of violating Section 1001,
because "it is well-settled that a defendant cannot challenge his conviction merely
because it is inconsistent with a jury's verdict of acquittal on another count." *Ibid.*
(internal quotation marks and citation omitted).

2. Legins also argues (Br. 13-19) that the evidence was insufficient to
establish the falsity of his statements because it failed to show that he engaged in a
sexual act with B.L. This contention is not supported by the record.

First, the evidence was more than sufficient to establish that Legins falsely
denied that he engaged in a sexual act with B.L. As the FBI agent testified, Legins
admitted in his interview with the FBI and OIG agents that during the May
incident, he took B.L. into the locked, officers-only, camera-less unit team area
hallway between the F-South and F-North housing units, and then into the camera-
less unit secretary's office within the hallway, and that he did so after hours when
the unit team was not present and their interaction could not be observed. J.A.
491-495; see J.A. 129-132, 137-138, 378-379, 460-461, 572-573, 589, 603. The

- 26 -

FBI agent also testified that Legins further conceded in his interview that his actions were "complacent and stupid," and several of Legins's work colleagues testified as to their impropriety.  J.A. 130-131, 137-138, 379, 461, 494, 506, 589, 603-604.  B.L. testified that Legins orally and anally raped him during the time they were alone in the unit secretary's office.  J.A. 251-257, 359.  B.L. immediately reported the assault to the FCI Petersburg lieutenant's office, and subsequently repeated his account of what happened to an FCI Petersburg nurse, an FCI Petersburg correctional officer, and a Richmond hospital nurse, all of whom testified as such.  J.A. 46, 262-263, 377-378, 458, 460, 630-632.  This testimony was further corroborated by DNA evidence confirming the presence of Legins's DNA on the clothing that B.L. was wearing that night and on an anal swab taken from B.L. that night.  J.A. 408-422.  Based upon all of this evidence, the jury could reasonably have concluded that Legins falsely denied that he engaged in a sexual act with any FCI Petersburg inmate at any time—including B.L. during the May incident.

Second, the evidence was more than sufficient to establish that Legins falsely stated that during the May incident he attempted to use a computer and printer in the unit secretary's office while engaged in "just conversation" with B.L. As the FBI agent testified, Legins explained in his interview with the FBI that he attempted to log on to the computer but was unable to enter his PIV number after

- 27 -

he inserted his PIV card into the reader and typed in his BOP number because "the numbers lock was on." J.A. 491, 493-494, 500-501, 503. The former information technology manager at FCI Petersburg contradicted Legins's account in two respects, testifying that no one attempted to access the computer in question during the time frame of the May incident and rejecting as implausible the scenario of a correctional officer being unable to enter a PIV number after entering his BOP number. J.A. 545-548, 551-554, 556-557. Based upon this testimony, the jury could reasonably have concluded that Legins never attempted to use the computer in the unit secretary's office while he was there alone with B.L. and, when this testimony is combined with B.L.'s testimony and the DNA evidence, that Legins falsely stated that he engaged in "just conversation" with B.L.

Legins's attempt to undercut the government's evidence is unavailing. He contends (Br. 14-19) that B.L.'s testimony was incredible, as it was rejected by the jury in its acquittals on the substantive sex-abuse counts and undermined by two defense witnesses. He also contends that the forensic evidence failed to uncover physical injury or Legins's semen on B.L.'s body that would indicate penetration of B.L.'s mouth or anus. These were arguments that Legins made to the jury and that it rejected. At bottom, Legins is asking this Court to ignore the applicable standard of review and second-guess the jury's assessment of the evidence. But because ample evidence supports the jury's conclusion that Legins engaged in a

- 28 -

sexual act with B.L. and falsely denied it, this Court must decline that invitation.
See *Louthian*, 756 F.3d at 303 ("In determining whether there is substantial
evidence to support a verdict, we defer to the jury's determinations of credibility
and resolutions of conflicts in the evidence, as they are within the sole province of
the jury and are not susceptible to judicial review.") (internal quotation marks and
citation omitted).

## II

### THE DISTRICT COURT PROPERLY APPLIED AN EIGHT-YEAR STATUTORY MAXIMUM SENTENCE TO LEGINS'S SECTION 1001 CONVICTION

A.    *Standard Of Review*

The question of which statutory provision provides the applicable statutory
maximum sentence is a legal issue that this Court reviews de novo.  *United States*
v. *Hamlin*, 319 F.3d 666, 670 (4th Cir. 2003).  This Court also reviews an alleged
denial of due process de novo.  *United States* v. *Legree*, 205 F.3d 724, 729 (4th
Cir. 2000), cert. denied, 531 U.S. 1080 (2001).[7]

---

[7] Legins did not raise a due process challenge in the district court, and his
passing reference to due process in response to the district court's inquiry
regarding the applicable statutory maximum sentence under Section 1001 likely
was insufficient to preserve this issue for appeal.  The district court *sua sponte*
ordered briefing on the applicable statutory maximum sentence after it noticed a
discrepancy between Section 1001's maximum sentence of eight years'
imprisonment for violations relating to investigations of sex abuse and the
government's representation at Legins's arraignment that he was subject to a

(continued…)

- 29 -

B.    *Legins Was Subject To The Maximum Eight-Year Sentence Because The FBI-OIG Investigation That He Obstructed Related To A Crime Of Sexual Abuse Under Chapter 109A, And The Government's Failure To Notify Him Of This At Arraignment Did Not Violate His Due Process Rights*

Section 1001 provides that a defendant convicted of making false statements

is generally subject to a statutory maximum sentence of five years' imprisonment,

but may be sentenced to a term of imprisonment of up to eight years "[i]f the

matter [in which he made a false statement] relates to an offense under chapter

109A." 18 U.S.C. 1001. Chapter 109A of Title 18 is titled "Sexual Abuse," and

includes the statutes that Legins was charged with violating—*i.e.*, 18 U.S.C.

2241(a) and 18 U.S.C. 2243(b). See 18 U.S.C. Ch. 109A.

Legins was correctly subject to Section 1001's eight-year statutory

maximum sentence because his false statements were made during an FBI-OIG

_____

(…continued)
maximum sentence of five years' imprisonment. J.A. 821; S.J.A. 1. In response to the district court's order, Legins argued that based on the indictment, jury instructions, and *Apprendi* v. *New Jersey*, 530 U.S. 466 (2000), he should be subject to a five-year maximum. Doc. 144, at 2-3. He further contended that he would be prejudiced by an enhanced sentence because he pleaded not guilty without understanding the full consequences of his plea, and mentioned at the end of his pleading that such prejudice "is and was a critical aspect of the defendant's due process." Doc. 144, at 3-4. In its order addressing this issue, the district court did not mention or address due process. Because Legins's passing reference to due process was "far too general to alert the district court to the specific reason that [he] now asserts," this Court may review his objection for plain error. See *United States* v. *Bennett*, 698 F.3d 194, 199-200 (4th Cir. 2012), cert. denied, 568 U.S. 1218 (2013). However, this Court need not determine the applicable standard of review because the district court did not err, plainly or otherwise, in applying the eight-year statutory maximum to Legins's conviction.

- 30 -

investigation into his suspected sexual abuse of an inmate (B.L.), potentially in

violation of 18 U.S.C. 2241(a) (aggravated sexual abuse) and 18 U.S.C. 2243(b)

(sexual abuse of a ward), which fall under chapter 109A of Title 18 (Sexual

Abuse).  Legins does not dispute that the FBI-OIG investigation looking into his

activities with B.L. was a matter that related to offenses under chapter 109A, but

argues instead that application of Section 1001's eight-year statutory maximum

sentence to his case violated his due process rights because the government

misinformed him of the applicable statutory maximum sentence at his arraignment.

Legins further argues that under *Apprendi* v. *New Jersey*, 530 U.S. 466 (2000), the

jury was required to find beyond a reasonable doubt that the FBI-OIG investigation

related to a chapter 109A offense.  Both of these arguments lack merit.

1.  The government's failure to notify Legins at his arraignment of the

correct statutory maximum sentence for the charged violation of Section 1001 did

not violate Legins' due process rights or otherwise prejudice him.  Rule 10 of the

Federal Rules of Criminal Procedure governs arraignments and provides that at

such proceedings the defendant must be provided a copy of the indictment, advised

of the substance of the charges against him, and asked to plea to the indictment.

Fed. R. Crim. P. 10(a).  Rule 10 does not grant the defendant the right to be

informed of the potential statutory penalties he faces, obviating any concern that

the government's misstatement of the applicable Section 1001 statutory maximum

- 31 -

penalty at Legins's arraignment hearing denied him his due process right to adequate notice. Cf. *United States* v. *Lampkin*, 730 F. App'x 144, 148-149 (4th Cir. 2018) (government's failure to specify at supervised-release revocation hearing state statute that the defendant violated did not deny him due process in light of no explicit requirement in applicable Federal Rule that such information be disclosed).

Even if Legins was owed the correct information concerning the statutory maximum sentence for his possible Section 1001 conviction at his arraignment, he would not be entitled to relief because the error was harmless beyond a reasonable doubt. See *United States* v. *Owen*, 407 F.3d 222, 229 (4th Cir. 2005) (applying harmless-error analysis to the defendant's claim that he was denied his Sixth Amendment right to counsel at arraignment), cert. denied, 546 U.S. 1098 (2006). The district court correctly concluded that the government's misstatement did not prejudice Legins because he cannot show that he would have changed his plea to guilty if the government gave him the correct information. Cf. *United States* v. *Ferrel*, 603 F.3d 758, 764-765 (10th Cir.) (district court's misstatement at the Rule 11 hearing of the applicable maximum and minimum statutory sentences the defendant faced was not reversible plain error where he failed to show that he would not have pled guilty had he received the correct information), cert. denied, 562 U.S. 971 (2010). Indeed, it would defy belief for Legins to contend that he

- 32 -

would have pleaded guilty to crimes carrying potential *life* sentences—*i.e.*, Counts 1 and 2—had he known that his Section 1001 violation carried a maximum sentence of eight years rather than five.

Notwithstanding Legins's inability to argue, much less show, that correct information about his statutory maximum sentence for his Section 1001 violation at arraignment would have caused him to change his decision to proceed to trial, Legins contends (Br. 22-23) that he suffered prejudice because the district court used the eight-year statutory maximum to increase his offense level under Section 2J1.2(b)(1)(A) of the Sentencing Guidelines, and thus his Guidelines range, before varying his sentence upward. This sentencing argument dressed up in due process garb is unavailing. The proper calculation of Legins's Guidelines offense level turns not on whether he received adequate notice of the correct statutory maximum sentence, but on whether the court correctly determined, as required under the Sentencing Guidelines, that his false statements occurred in a matter relating to a chapter 109A offense. Here, Legins waived any objection to the court's determination of his offense level by failing to raise it in his opening brief. See *United States* v. *Hudson*, 673 F.3d 263, 268 (4th Cir.), cert. denied, 568 U.S. 859 (2012). In any event, the district court correctly determined Legins's offense level based on the jury's findings that he made both false statements alleged in the indictment.

- 33 -

2.  Legins's argument that *Apprendi* required the jury to find beyond a reasonable doubt that the FBI-OIG investigation related to a chapter 109A offense also lacks merit.  Contrary to Legins's assertion (Br. 21-22), *Apprendi* does not require the government to submit to the jury and prove beyond a reasonable doubt a fact that increases a sentence *within* a statutorily authorized penalty range. Rather, *Apprendi* only requires such proof for "any fact that increases the penalty for a crime *beyond* the prescribed statutory maximum."  530 U.S. at 490 (emphasis added).  Legins does not dispute (Br. 22) that at a minimum the jury convicted him of a standard Section 1001 offense, which subjects a defendant to a term of imprisonment of up to five years.  See 18 U.S.C. 1001.  Because the district court imposed a penalty upon Legins of 54 months' imprisonment, which is less than Section 1001's prescribed statutory maximum sentence of 60 months' imprisonment, his sentence did not implicate *Apprendi*.  See, *e.g.*, *United States* v. *Myers*, 280 F.3d 407, 416 (4th Cir.) ("[T]his court does not extend *Apprendi* to determinations under the Sentencing Guidelines that do not exceed the statutory maximum."), cert. denied, 537 U.S. 852 (2002); *United States* v. *Angle*, 254 F.3d 514, 518 (4th Cir.) (en banc) (no *Apprendi* error where the defendant's sentence was less than the maximum penalty authorized by the facts found by the jury), cert. denied, 534 U.S. 937 (2011).

- 34 -

Even if *Apprendi* did apply, Legins would not prevail on this argument. The verdict form indicates that in convicting Legins of violating Section 1001, the jury found beyond a reasonable doubt that he (1) falsely denied he had engaged in a sexual act with any inmate at any time at FCI Petersburg, and (2) falsely stated that on May 10, 2018, he attempted to use a computer and printer while engaged in "just conversation" with B.L. when they were alone in an unattended office with no surveillance cameras. J.A. 820. After making these *factual* findings, the jury was not required under *Apprendi* to make the additional *legal* conclusion reached by the district court that Legins's false statements occurred in a matter related to a criminal offense under Chapter 109A. See *United States* v. *Thompson*, 421 F.3d 278, 283 (4th Cir. 2005) (holding that "whether a felony meets the statutory definition of a violent felony" is a question of law that "does not trigger * * * Sixth Amendment concerns" if not determined by a jury), cert. denied, 547 U.S. 1005 (2006).

### III

### LEGINS'S 54-MONTH SENTENCE WAS PROCEDURALLY AND SUBSTANTIVELY REASONABLE

A.    *Standard Of Review*

"[A]ny sentence, within or outside of the Guidelines range, as a result of a departure or variance, must be reviewed * * * for reasonableness pursuant to an abuse of discretion standard." *United States* v. *Diosdado-Star*, 630 F.3d 359, 365

- 35 -

(4th Cir.), cert. denied, 563 U.S. 1027 (2011); see also *Gall* v. *United States*, 552 U.S. 38, 51 (2007). Where, as here, the district court granted a variance from the Sentencing Guidelines, this Court "consider[s] whether the sentencing court acted reasonably both with respect to its decision to impose such a sentence and with respect to the extent of the divergence from the sentencing range." *United States* v. *Washington*, 743 F.3d 938, 944 (4th Cir. 2014) (quoting *United States* v. *Hernandez-Villanueva*, 473 F.3d 118, 123 (4th Cir. 2007)).

B.    *The District Court's Decisions To Grant The Government's Motion For An Upward Variance From Legins's Sentencing Guidelines Range And To Sentence Him To 54 Months' Imprisonment Were Reasonable*

The district court denied Legins's motion for a downward variance, and granted the government's motion for an upward variance, based upon its determination that Legins engaged in (1) abusive sexual contact during the March incident, (2) premeditated sexual misconduct during the March and May incidents, and (3) premeditated obstruction of his sexual misconduct from the May incident. J.A. 1053-1057. The court then calculated a Sentencing Guidelines range of 46 to 57 months' imprisonment by adding the Guidelines range of 15 to 21 months' imprisonment for abusive sexual contact to Legins's original Guidelines range of 27 to 33 months' imprisonment, resulting in a Guidelines range of 42 to 54 months, and rounding up to the Guidelines range for offense level 23. J.A. 1057-1058. From within this range, the court applied the sentencing factors set forth in

- 36 -

18 U.S.C. 3553(a), in particular Sections 3553(a)(1) and 3553(a)(2)(A)-(D), and
sentenced Legins to 54 months' imprisonment and three years' supervised release.
J.A. 1058.  Because both the decision to vary upward and the extent of the
divergence from the sentencing range were reasonable, based as they were upon a
careful examination of Legins's misconduct, the district court acted well within its
discretion in imposing this sentence.  Legins's procedural and substantive
reasonableness arguments to the contrary lack merit.

    1.  "[T]o meet the procedural reasonableness standard, a district court must
conduct an individualized assessment of the facts and arguments presented and
impose an appropriate sentence, and it must explain the sentence chosen." *United
States* v. *Nance*, 957 F.3d 204, 212 (4th Cir.) (internal quotation marks and citation
omitted), cert. denied, No. 20-5825, 2020 WL 6385951 (Nov. 2, 2020).  A district
court "may find facts relevant to determining a Guidelines range by a
preponderance of the evidence," *United States* v. *Cox*, 744 F.3d 305, 308 (4th Cir.
2014) (citation omitted), that is, the facts are "more likely than not" to be true,
*United States* v. *Kiulin*, 360 F.3d 456, 461 (4th Cir. 2004).  This Court reviews a
district court's legal conclusion de novo and its factual findings for clear error.
*United States* v. *Hampton*, 441 F.3d 284, 287 (4th Cir. 2006).  "Clear error occurs
when the reviewing court on the entire evidence is left with the definite and firm

conviction that a mistake has been committed." *Cox*, 744 F.3d at 308 (alteration and citation omitted).

Legins argues that the district court's decision to vary upward from his Sentencing Guidelines range, and the means by which it calculated a new Guidelines range, were procedurally unreasonable in two respects.  First, Legins contends (Br. 24-25, 28) that the court improperly relied on uncharged abusive sexual contact from the March incident to conclude that an upward variance was warranted and to calculate a Guidelines range of 46 to 57 months' imprisonment. Second, Legins asserts (Br. 30-35) that the Guidelines do not authorize the court to vary upward in this situation except for in "unusual circumstances," which were not present in this case because the factors upon which the district court relied to find his conduct premeditated and obstructive were "neutral" or contradicted by the jury's acquittal of him on the substantive sex-abuse counts.  These defense arguments fail.

First, the district court reasonably relied upon Legins's uncharged abusive sexual contact with B.L. during the March incident to determine that an upward variance was warranted and that the appropriate Guidelines range was 46 to 57 months' imprisonment.  In determining a Sentencing Guidelines range, a court "may consider uncharged and acquitted conduct  *  *  *  as long as that conduct is proven by a preponderance of the evidence." *United States* v. *Grubbs*, 585 F.3d

- 38 -

793, 799 (4th Cir. 2009), cert. denied, 559 U.S. 1022 (2010). B.L. testified that

during the March incident, Legins confined him to an elevator in the F-South unit

team area (the same area where the May incident occurred) and forced him to

perform oral sex. J.A. 221-223, 227-234, 505. The testimony was corroborated by

evidence of subsequent DNA testing of the sweatshirt B.L. was wearing at the time

of the assault, which revealed the presence of Legins's DNA. J.A. 408-422. Based

on this record, the district court did not clearly err in finding it more likely than not

that Legins had abusive sexual contact with B.L. during the March incident. See

J.A. 921-922.

The court used the offense of abusive sexual contact to support its upward

variance, reasoning that Legins's Sentencing Guidelines range failed to account for

this related misconduct. J.A. 1053-1054. The court then calculated a Guidelines

range of 15 to 21 months' imprisonment for this offense, which it added to

Legins's original Guidelines range of 27 to 33 months' imprisonment to reach a

total range of 42 to 54 months' imprisonment. J.A. 1057-1058. The court

observed that this range fell between the ranges for offense levels 22 and 23 and

chose the range for the latter offense level, 46 to 57 months' imprisonment,

because it "better account[ed] for [Legins's] offense and related conduct." J.A.

1058. These determinations were reasonable, as they were "individualized to

- 39 -

[Legins], taking account of the characteristics of the defendant and the facts of the case." *Nance*, 957 F.3d at 212 (internal quotation marks and citation omitted).

Second, the Guidelines do not preclude the district court from varying upward in this case based upon its findings that Legins engaged in premeditated and obstructive conduct—*e.g.*, calling the prison medical facility and lieutenant's office for suspicious reasons following the alleged assault; suggesting to investigators and another correctional officer that his semen ended up on B.L.'s clothing because he masturbated in the unit secretary's bathroom that B.L. subsequently cleaned; targeting and "grooming" B.L. for sexual activity; and taking B.L. into the unattended and camera-less unit team area hallway during the March and May incidents to avoid detection.  See J.A. 1054-1056.  Legins argues (Br. 30-31) that Sections 2J1.2 and 5K2.7 of the Sentencing Guidelines provide the sole basis for an upward departure and do not support the district court's upward variance in this case, but that argument fails because it mistakenly conflates "departures" with "variances."  "A departure is a sentence imposed under the framework set out in the Guidelines," while a variance is "a non-Guidelines sentence (either above or below the properly calculated advisory Guidelines range) that is nevertheless justified under the sentencing factors set forth in 18 U.S.C. § 3553(a)."  *United States* v. *Rivera-Santana*, 668 F.3d 95, 100 n.6 (4th Cir.) (internal quotation marks and citations omitted), cert. denied, 568 U.S. 889 (2012).

- 40 -

The court repeatedly stated at the sentencing hearing and in its memorandum opinion that it was granting the government's motion for an upward *variance* (see J.A. 982, 985-986, 991-995, 1016-1021, 1053-1057), rendering Legins's argument inapposite.

To the extent that Legins's dismissal (Br. 29, 31-35) of the district court's factual findings that his conduct was premeditated and obstructive can be interpreted as an objection to the grounds for the court's variance decision, it is unavailing. The government introduced significant evidence of Legins's premeditation and obstruction, including his taking of B.L. into the camera-less and unattended unit team area hallway and unit secretary's office within that hallway during the May incident; his calls to the prison medical facility and lieutenant's office after the alleged assault inquiring about B.L.'s whereabouts; his shouts in B.L.'s direction that B.L. was not to be believed; his incredible speculation to government agents and a fellow correctional officer that his DNA could have been recovered from B.L.'s clothing because he had masturbated in the unit secretary office's bathroom that B.L. subsequently cleaned; and his attempt to get another correctional officer to write a statement that he escorted B.L. directly from the F-South to the F-North housing unit and that they were in the corridor connecting the units for only one minute. See J.A. 263, 271-272, 382-385, 466-472, 491-495, 506, 509, 511-514, 516-518, 521, 523-525, 567, 570-572, 579-581,

- 41 -

588, 605-606, 608, 611-612, 617, 633-635.  Legins's alternative interpretation of some of this evidence falls far short of showing that the district court clearly erred in finding it more likely than not that he committed sexual abuse of a ward during the May incident and attempted to cover up his misconduct.  See J.A. 1053-1057.

2.  In assessing the substantive reasonableness of a variance sentence, this Court must "give due deference to the district court's decision that the § 3553(a) factors, on the whole, justify the extent of the variance."  *Gall*, 552 U.S. at 51.  This standard requires this Court to "affirm a reasonable sentence, even if [it] would have imposed something different."  *Washington*, 743 F.3d at 943-944.  In other words, "[i]f the district court's justifications for the variance sentence are tied to § 3553(a) and are plausible, [this Court] will uphold the sentence as reasonable."  *Hampton*, 441 F.3d at 287 (internal quotation marks and citation omitted).  There is "no presumption of unreasonableness" for a variance sentence, *Irizarry* v. *United States*, 553 U.S. 708, 713 (2008), even one that "deviates significantly from the advisory Guidelines range," *United States* v. *Hargrove*, 701 F.3d 156, 163 (4th Cir. 2012) (quoting *Rivera-Santana*, 668 F.3d at 106).

Legins contends (Br. 25-27, 35-37 (incorporating by reference J.A. 875-877)) that the court misapplied Section 3553(a)'s sentencing factors in sentencing him to 54 months' imprisonment, because it gave short shrift to his history and characteristics and improperly relied upon acquitted conduct that occurred during

- 42 -

the May incident in violation of his Sixth Amendment right to have his sentence determined by a jury. These defense arguments are unavailing.

First, the district court properly considered and weighed Section 3553(a)'s sentencing factors in arriving at Legins's sentence of 54 months' imprisonment. The court focused on the seriousness of Legins's conduct, the manner in which he committed his crime of conviction, and his history and characteristics (Sections 3553(a)(1), (a)(2)(A)); the need for adequate deterrence to him and similarly situated correctional officers who violate their positions of public trust (Section 3553(a)(2)(B)); and the need to protect the public given Legins's repeated incidences of sexual misconduct (Section 3553(a)(2)(C)). J.A. 1058; see J.A. 1028-1030. Because the court tied its justifications for Legins's sentence to the relevant Section 3553(a) factors, its modest upward variance of less than two years above the high end of Legins's Sentencing Guidelines was reasonable. See *Diosdado-Star*, 630 F.3d at 367 (six-year upward variance above the top of the defendant's recommended Guidelines range was not abuse of discretion given the district court's proper consideration and full explanation of its decision pursuant to the Section 3553(a) factors and the defendant's serious misconduct and high likelihood of recidivism). Legins offers no legitimate basis to reweigh these factors in his favor.

- 43 -

Second, the district court reasonably relied upon Legins's acquitted conduct during the May incident in applying the Section 3553(a) factors. As noted above, a court may consider acquitted conduct in sentencing a defendant so long as such conduct is proven by a preponderance of the evidence. See *Grubbs*, 585 F.3d at 799. The government presented considerable physical and testimonial evidence that Legins engaged in a sexual act with B.L. during the May incident. See pp. 25-26, 40-41, *supra*. Given the strength of this evidence, the district court did not clearly err in finding it more likely than not this offense occurred. See J.A. 922. Moreover, it is well-settled that a district court's consideration of acquitted conduct in increasing a defendant's sentence above his initial Guidelines range does not violate the Sixth Amendment. See *Grubbs*, 585 F.3d at 798-799.

- 44 -

## CONCLUSION

This Court should affirm Legins's conviction and sentence.

Respectfully submitted,

GREGORY B. FRIEL
  Deputy Assistant Attorney General

s/ Christopher C. Wang
TOVAH R. CALDERON
CHRISTOPHER C. WANG
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 514-9115

## STATEMENT REGARDING ORAL ARGUMENT

Legins does not request oral argument.  The United States also does not believe that oral argument is necessary given the straightforward nature of the issues on appeal.

# CERTIFICATE OF COMPLIANCE

I certify, pursuant to Federal Rule of Appellate Procedure 32(g):

1. This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), the brief contains 10,064 words.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2019 in Times New Roman, 14-point font.

s/ Christopher C. Wang
CHRISTOPHER C. WANG
 Attorney

Date:  January 26, 2021